UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WILMOT LEWIS, as Personal Representative of the Estate of Ethel W. Lewis, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Docket No. 08-cv-201-P-S |
| GEICO GENERAL INSURANCE COMPANY, | )<br>)<br>)<br>) |
| Defendant. | ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (Docket # 16). As explained herein, the Court GRANTS the motion.

**I.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. See Santoni, 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## II.   FACTUAL BACKGROUND

Defendant GEICO General Insurance Company ("GEICO") issued Lori Marston ("Marston") a six-month automobile insurance policy on April 19, 2006. As a "new business" insured, Marston was to pay the policy premium in five installments: a higher initial payment at the time of issuance[1] and four additional equal payments due each month thereafter. Marston tendered the initial payment by credit card in the amount of $212, or 25% of the policy premium, on April 19, 2006. She paid the remaining balance on the initial policy in only three additional payments and, ultimately, ahead of schedule.[2] As of

---

[1] Lewis purports to deny this fact, but his denial is unsupported by any citation to the summary judgment record. (See Defendant's Statement of Material Facts ("Defendant's SMF") (Docket # 17) ¶ 4; Plaintiff's Response to Defendant's Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket # 18) ¶ 4.) Because this fact is supported by the record citation provided by GEICO, it is deemed admitted.

[2] Marston's second installment payment on the initial six-month policy, in the amount of $160, was due on May 19, 2006. She failed to make this payment on time, and GEICO sent her a Notice of Cancellation on May 22, 2006, which stated that the policy would be cancelled due to nonpayment of premium, effective June 7th. Marston then remitted her second installment payment, in the amount of $160, on May 28, 2006.

2

July 27, 2006, Marston had paid her entire six-month premium and was covered through the equity date[3] of October 19, 2006.

If Marston wanted to extend her coverage beyond that date, she needed to renew the policy. Because renewed insureds are not considered "new business," GEICO allows monthly installment customers to pay the policy premium in six equal monthly installments. Each installment payment is due thirty days before the existing equity date; payment of each installment advances the existing equity date one month.[4]

On September 5, 2006, GEICO sent Marston a renewal bill for a second six-month policy, which contained a section entitled "Payment Schedule." (See Ex. F to Aff. of Robin Lubow (Docket # 17-2) at 11.) This Schedule indicated that at minimum, the total renewal premium of $834.30 would be paid in six monthly installment payments of $143.[5] The first renewal installment payment was due on September 19, 2006, despite the fact that Marston was already covered under her initial policy through October 19, 2006. Marston responded to the renewal bill by submitting her first renewal installment payment by check

---

Marston also failed to pay her third installment payment on time and received another Notice of Cancellation, which stated that the policy would be cancelled due to nonpayment of premium, effective July 9, 2006. She then remitted her third installment payment in the amount of $200, which was $40 more than the minimum due, on July 7, 2006. This payment history suggests that Marston was familiar with GEICO's Notice of Cancellation. (See Exs. B & D to Aff. of Robin Lubow (Docket # 17-2) at 7, 9.)

On July 27, 2006, Marston remitted her fourth installment payment in the amount of $274.30, which was the remaining balance on the initial premium.

[3] The term "equity date" refers to the latest date up to which an insured has paid for coverage. (See Defendant's SMF ¶ 29; Plaintiff's Responsive SMF ¶ 29.)

[4] Lewis purports to deny GEICO's characterization of the generic renewal process. (See Defendant's SMF ¶¶ 24-25; Plaintiff's Responsive SMF ¶¶ 24-25.) However, its objections are more accurately characterized as argument, first, that GEICO's procedure is illegal and, second, that Marston did not consent to the modification of the payment schedule. The Court addresses this argument in its Discussion section.

[5] Each installment amount included a $4 premium installment charge.

3

dated September 13, 2006.[6] Both parties agree that in so doing, Marston extended her coverage through at least November 19, 2006.

On October 5, 2006, GEICO sent Marston a bill for her second renewal installment payment. (See Ex. H to Aff. of Robin Lubow (Docket # 17-2) at 36.) This bill indicated that the current balance on the renewal premium was $699.30; the Payment Schedule indicated that at minimum, the balance would be paid in five additional monthly installment payments of $143, with the next renewal installment payment due on October 19, 2006. This next renewal installment payment would have extended coverage another month, through December 19, 2006, but Marston failed to submit it.

On November 3, 2006, GEICO sent a Notice of Cancellation that had been approved by the United States Postal Services as an acceptable certificate of mailing to Marston's correct address. (See Ex. I to Aff. of Robin Lubow (Docket # 17-2) at 37.) The Notice listed a "past due" amount of $143 and indicated that the policy would be cancelled, effective November 19, 2006, if a payment of $143 was not postmarked by that date. The Notice also advised Marston of her rights in accordance with 24-A M.R.S.A. § 2915 and stated that she should disregard the Notice if payment had already been sent.

Marston never tendered her second renewal installment payment. Consequently, GEICO cancelled her renewal policy, effective November 19, 2006. GEICO physically cancelled the policy on November 30, 2006,[7] at which time it provided immediate electronic notification to the Maine Secretary of State's Office.

---

[6] Marston's check was dated September 13, 2006, but GEICO did not process it until October 1st. (See Ex. 5 to Plaintiff's ASMF (Docket # 18-6) at 62:6-63:4.)

[7] GEICO does not physically cancel a policy until nine to eleven days after the effective date of cancellation to allow for receipt of a timely postmarked installment payment.

4

On December 4, 2006, a vehicle driven by Marston struck pedestrian Ethel Lewis, who died as a result of injuries sustained in the accident. One day later, Marston, believing that her automobile was insured, contacted GEICO to report the accident. GEICO informed Marston that it had previously cancelled her insurance policy for nonpayment.

Following the accident, Plaintiff Wilmot Lewis ("Lewis"), as Personal Representative of the Estate of Ethel W. Lewis, initiated a wrongful death proceeding in Maine Superior Court against Marston and Farm Family Casualty Insurance Company.[8] GEICO notified Marston that it would not defend or indemnify her in the wrongful death lawsuit. Marston then retained an attorney to represent her.

Ultimately, on April 16, 2008, Lewis and Marston agreed to settle the lawsuit by entering into a stipulated judgment in the amount of $536,837. Pursuant to that settlement, Marston assigned to Lewis all her related rights and claims against GEICO, in exchange for Lewis's covenant not to execute the judgment against Marston personally. On May 1, 2008, the Court entered final judgment against Marston in the settled amount.

Lewis now asserts various assigned claims against GEICO. Specifically, he seeks to "reach and apply" any available insurance proceeds under Marston's policy, pursuant to 24-A M.R.S.A. § 2904; to recover damages for GEICO's alleged breach of its contractual duty to defend Marston; and to recover damages for GEICO's alleged breach of its duty to negotiate a settlement in the underlying lawsuit, in violation of the Maine Unfair Settlement Practices Act. After removing to this Court, GEICO filed the instant motion for summary judgment, in which it contends that because Marston was not insured at the time of the accident, it is entitled to judgment as a matter of law on all claims.

---

[8] In the underlying wrongful death suit, Lewis sued Farm Family Casualty Insurance Company because, he alleged, Marston "was an uninsured motorist operating an uninsured motor vehicle." (Compl. (Docket # 17-6) ¶ 21.)

5

### III.    DISCUSSION

Both parties agree that GEICO cancelled Marston's coverage before the date of the accident. Their dispute concerns the legitimacy of that cancellation. Lewis asserts that Marston never received the Notice of Cancellation and that GEICO's cancellation violated the Maine Automobile Insurance Cancellation Control Act, 24-A M.R.S.A. § 2911 et seq. Moreover, he contends that Marston was never informed that GEICO had unilaterally changed her payment schedule from five to six installments, and suggests that Marston reasonably believed, based on her prior course of dealing with GEICO, that her first renewal installment payment extended her coverage beyond November 19, 2006. Finally, Plaintiff characterizes the policy and payment schedule as ambiguous.

In response, GEICO contends that it owed Marston no contractual or statutory duties on the date of the accident because it had effectively cancelled her policy prior to that date. See 24-A M.R.S.A. § 2904 (judgment debtor in reach-and-apply claim must be insured at the time the cause of action accrues); Edwards v. Lexington Ins. Co., 475 F. Supp. 2d 107, 109 n.3 (D. Me. 2007) (nonpayment of premium "can defeat duty both to defend and to indemnify because 'the coverage dispute depends entirely on the relationship between the insurer and the insured'") (quoting Patrons Oxford Mut. Ins. Co. v. Garcia, 707 A.2d 384, 386 (Me. 1998)).

#### A.    Validity of Cancellation

The Maine Automobile Insurance Cancellation Act authorizes cancellation of an insured's automobile policy for nonpayment of premium. See 24-A M.R.S.A. §§ 2912(3), 2914(1). In order to effectuate cancellation, an insurer must satisfy the statute's notice requirements. Specifically, when the cancellation is due to nonpayment of premium, "[a]

notice of cancellation of a policy is not effective unless received by the named insured . . . at least 10 days prior to the effective date of cancellation." Id. § 2915. The notice must contain the reason for cancellation and must inform the insured of her right to a hearing within thirty days. See id.

GEICO sent Marston a Notice of Cancellation on November 3, 2006, sixteen days before the effective date of cancellation. The Notice stated that the policy would be cancelled, effective November 19, 2006, for nonpayment of premium. It also informed Marston of her right to a hearing. Although Marston denies actually receiving the Notice, section 2915 provides that "[a] postal service certification of mailing to the named insured at the insured's last known address is conclusive proof of receipt on the 5th calendar day after mailing." Id. Plaintiff acknowledges that the Notice was mailed to Marston's correct address and had been approved by the United States Postal Services as an acceptable certificate of mailing. Thus, the Notice was presumptively received by Marston on November 8, 2006, eleven days before the effective date of cancellation. See Valley Forge Ins. Co. v. Concord Group Ins. Co., 623 A.2d 163, 164 (Me. 1993).

In attacking the validity of GEICO's Notice of Cancellation, Lewis misconstrues the Act's requirements. He seems to imply that the statute requires a ten-day grace period after the insurer's policy expires. (See Pl.'s Opp'n to Def.'s Mot. for Summ. J. (Docket # 20) at 13.) But the plain language of section 2915 provides otherwise: an insurer must notify the insured of an impending cancellation "prior to the effective date of cancellation." See 24-A M.R.S.A. § 2915. Thus, the statute implicitly authorizes the mailing of a notice of cancellation before the policy expires.[9]

---

[9] To be clear, this is not a case where the insurer provides an anticipatory or conditional notice of cancellation before the insured fails to make payment. See, e.g., Equity Ins. Co. v. City of Jenks, 184 P.3d

7

At the time of the accident, Maine law also required that an insurer notify the Secretary of State when it cancelled an automobile policy. See 29-A M.R.S.A. § 1601-A (repealed 2007). On November 30, 2006, GEICO sent electronic notification of the Marston cancellation to the Maine Secretary of State's Office, which received the Notice of Cancellation on December 1. Plaintiff does not object to the validity of GEICO's notice to the Secretary of State.

In sum, the Notice of Cancellation satisfied the statutory requirement; by November 30, 2006, GEICO had effectively terminated its contractual relationship with Marston. Compare State Farm Mut. Auto. Ins. Co. v. Libby, 655 A.2d 880, 884 (Me. 1995) (affirming grant of summary judgment to insurer that satisfied notice requirement), with Blanchet v. Assurance Co. of Am., 766 A.2d 71, 75 (Me. 2001) (vacating grant of summary judgment due to insurer's failure to comply with statutory notice requirement).

### B. Marston's Reasonable Expectations

Even if GEICO's Notice of Cancellation was technically valid, Lewis asserts, the cancellation violated Marston's reasonable expectations regarding the scope of coverage: "Based upon the language of her policy and her prior course of dealing with GEICO, Marston's belief that she was covered on December 4, 2006 is reasonable." (See Pl.'s Opp'n to Def.'s Mot. for Summ. J. (Docket # 20) at 8.) Specifically, Lewis claims that GEICO's change of the payment schedule from five to six installments violated Marston's initial understanding of the policy and its language regarding modification, and created an ambiguity that ought to be construed in favor of coverage. See Ryder v. USAA Gen. Indem. Co., 938 A.2d 4, 7 (Me. 2007); Colford v. Chubb Life Ins. Co. of Am., 687 A.2d

---

541, 545 (Okla. 2008) ("Notice of cancellation cannot be given prior to occurrence of the event that triggered the insurer's option to cancel: nonpayment of premium."). GEICO sent the Notice of Cancellation on November 3, 2006, more than two weeks after Marston's second renewal installment payment became due.

8

609, 614 (Me. 1996) (ambiguous contract "will be construed against the insurer so as to comply with the objectively reasonable expectations of the insured.").

Lewis's argument goes like this: Marston's initial six-month premium was payable in five installments. The first installment was due at the time of issuance and advanced the equity date by more than one month. As a result, Marston reasonably believed, based on her prior course of dealing, that her first renewal installment payment was due at the time of renewal, October 19, 2006, and would advance the equity date by more than one month.[10] As previously described, Marston's renewal six-month premium was actually payable in six equal installments, each due one month before, and each advancing by one month, the existing equity date; the first renewal installment payment was due on September 19, 2006.

Even when viewed in the light most favorable to the nonmoving party, the record simply does not support Lewis's argument. First, the renewal bill sent on September 5, 2006, which Marston assumed she received, contained both a "Payment Schedule" and "Due Date" that listed the first installment as due on September 19, 2006, the second on October 19th, and so forth. Indeed, Marston mailed her first renewal installment payment of $143 in response to this bill. Furthermore, that payment was remitted by check dated September 13, 2006, which suggests that Marston knew that payment was due before September 19th. (See Ex. 5 to Plaintiff's ASMF (Docket # 18-6) at 62:6-63:4.) Finally, Marston's first installment payment was $143, or one-sixth of the total renewal premium.

---

[10] (See Plaintiff's ASMF ¶ 35 ("When Marston made the first payment for her renewal policy, she understood that she was paying for automobile insurance coverage from October 19, 2006 through at least November 19, 2006.") (emphasis added); but see Plaintiff's Responsive SMF ¶ 28 ("After making a payment on her renewal policy, which was received on October 1, 2006, Marston had paid for coverage up through November 19, 2006.") (emphasis added); Defendant's Reply Statement of Material Facts (Docket # 22) ¶ 35 (citing Ex. 5 to Plaintiff's ASMF (Docket # 18-6) at 69:20-70:1).)

The renewal policy covered a six-month period. Thus, even if Marston subjectively believed that the first installment payment was due on October 19, 2006, the amount of the payment suggested that it extended her equity date only one month, to November 19th.[11] In sum, Lewis has not generated a trialworthy issue as to the objective reasonableness of Marston's belief that her first installment payment was due on October 19, 2006, or, more critically, that a single payment of $143 somehow extended her renewal coverage beyond November 19, 2006. See Libby, 655 A.2d at 882 (affirming grant of summary judgment to insurer because insured could not reasonably expect to be covered on effective date of cancellation after mailing his payment the night before).

Lastly, Lewis contends that the change of the payment schedule from five to six installments violated the policy's language regarding modification. The policy provides that its terms and provisions "cannot be waived or changed, except by an endorsement that is issued to form a part of this policy." (See Ex. G to Aff. of Robin Lubow (Docket # 17-2) at 25.) However, Lewis fails to identify any authority for the proposition that the number of installment payments constitutes such a term or provision. In fact, the absence of any such evidence in the summary judgment record suggests just the opposite. (See id. at 13-28.)

In short, Lewis has not generated any genuine issue of material fact as to the validity of GEICO's Notice of Cancellation, or any ambiguity or objectively reasonable expectation that might have qualified GEICO's ability to cancel Marston's policy. Even when viewing all evidence in the light most favorable to Lewis, the renewal bill's

---

[11] Because Marston's first installment payment on the initial six-month policy constituted 25% of the premium, it advanced her equity date by approximately seven weeks. (See Defendant's SMF ¶¶ 8, 12; Plaintiff's Responsive SMF ¶¶ 8, 12.) But Marston's first renewal installment payment constituted one-sixth of the renewal premium, and thus advanced the equity date by only one month to November 19.

10

"Payment Schedule" and "Due Date" clearly indicated that the first installment payment was due on September 19, 2006; Marston's payment by check dated September 13th indicates that she was aware of this fact. And even if Marston subjectively believed that the first renewal installment payment was not due until October 19, 2006, no trialworthy issue exists as to whether she could reasonably believe that a single payment of $143 extended her coverage beyond November 19, 2006. Summary judgment for the insurer is thus warranted. See Libby, 655 A.2d at 882; Dolan v. Guarantee Trust Life Ins. Co., 485 F. Supp. 2d 1046, 1058 (S.D. Iowa 2007).

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant's Motion for Summary Judgment (Docket # 16) is hereby GRANTED. Judgment shall be entered accordingly.

SO ORDERED.

      /s/ George Z. Singal
      United States District Judge

Dated this 4th day of March, 2009.